UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| CARLA C., | ) |  |
|---|---|---|
| Plaintiff | ) ) ) | |
| v. | ) ) | 1:20-cv-00292-JDL |
| ANDREW M. SAUL, Commissioner of Social Security, | ) ) ) ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDED DECISION

On Plaintiff's application for disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act, Defendant, the Social Security Administration Commissioner, found that Plaintiff has severe impairments but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court affirm the administrative decision.

### THE ADMINISTRATIVE FINDINGS

The Commissioner's final decision is the September 19, 2019 decision of the Administrative Law Judge. (ALJ Decision, ECF No. 11-2).[1] The ALJ's decision tracks

---

[1] Because the Appeals Council found no reason to review that decision (R. 1), Defendant's final decision is the ALJ's decision.

the familiar five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. §§ 404.1520, 416.920.

The ALJ found that Plaintiff has severe, but non-listing-level impairments consisting of cardiac impairment, respiratory disorder, and depression and anxiety disorder. (R. 46.) The ALJ further determined that Plaintiff had a residual functional capacity (RFC) to perform sedentary work, including an ability to lift/carry ten pounds occasionally, sit for six hours and stand and/or walk for two hours in an eight-hour workday, can frequently stoop, can occasionally crouch, kneel, and balance on uneven surfaces, but must avoid climbing, crawling, sharp objects, and working in settings involving enclosed exposure to extreme heat and cold, humidity, fumes, dusts, gases, or chemicals, or working around unprotected heights or heavy moving machinery. Additionally, the ALJ found that Plaintiff can make simple work-related decisions, adapt to simple changes in a routine work setting, and perform simple work tasks involving no more than occasional interaction with the public, coworkers, and supervisors. (R. 48.)

Based on the RFC finding, the ALJ concluded that Plaintiff could not perform past relevant work, but could perform other substantial gainful activity, including the specific representative jobs of assembler, table worker, and document preparer. (R. 52-53.)

## STANDARD OF REVIEW

A court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*,

819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## DISCUSSION

Plaintiff argues that the ALJ erred when he (1) failed to assess properly the evidence of Plaintiff's potential absenteeism and (2) improperly assessed Plaintiff's RFC.

**A. Absenteeism**

Plaintiff argues that the ALJ improperly concluded that Plaintiff's hospitalization and treatment history for her severe cardiac impairment and respiratory disorder did not support a finding of significant off-task behavior or excessive absenteeism.

Plaintiff was hospitalized for at least 21 days over a four-month period in 2017, beginning in July.[2] (R. 404-13, 418-30, 435-38, 440-43, 506-06, 493-516.) She was initially hospitalized with acute-on-chronic exacerbation of heart failure with known history of nonischemic cardiomyopathy with ejection fraction of 25 percent, paroxysmal atrial fibrillation, insulin-dependent diabetes mellitus, and mild nonobstructive coronary

---

[2] There is some uncertainty as to the exact number of days Plaintiff was hospitalized in 2017. Plaintiff states she was hospitalized for 18 days, but according to the dates of hospitalization she lists (July 22-28 (seven days), August 12-17 (six days), August 29-30 (two days), and October 20-25 (six days)), the total number of days is 21. (*See* SOE at 7.) In the opposition brief, Defendant provides a chart of Plaintiff's hospitalizations that suggests a total of 22 days in 2017. (Opposition at 6.) The difference of a few days, however, is not material to the assessment of Plaintiff's argument.

artery disease. (R. 408.) She was started on anticoagulant therapy and discharged. (*Id*).

From August 11 to August 17, 2017, Plaintiff was hospitalized for heavy menstrual bleeding. (R. 436.) Plaintiff was taken off the anticoagulant and given a blood transfusion for anemia. (R. 436, 421.) Plaintiff was hospitalized again in late August 2017 due to heavy menstrual bleeding. (R. 421-25.)

In October 2017, Plaintiff was hospitalized for a urinary tract infection. (R. 493-96.) She was also experiencing heavy bleeding, which led to anemia. (R. 504, 506.) An urgent dilation and curettage and an endometrial ablation were performed. (R. 505, 512.)

Plaintiff sought acute care for respiratory complaints on four occasions starting in November 2018. (R. 692, 705, 734, 776-77, 798, 802-05.) In November 2018, Plaintiff was diagnosed with pneumonia and later with a viral syndrome for which conditions she sought acute care on two occasions. (R. 690, 692, 776.) She was diagnosed with acute bronchitis in December 2018. (R. 705.)

In February 2019, she sought acute care for nasal sinus congestion and was hospitalized a few days later for fatigue, cough and multifactorial dyspnea. (R. 793.) During her February 2019 hospitalization, an x-ray of Plaintiff's esophagus revealed moderate to severe soft tissue dysmotility possibly due to presbyesophagus. (R. 799, 804-05.) The attending physician observed that Plaintiff's "pulmonary problems may well be a consequence of this." (R. 803.) In May 2019, Plaintiff also received acute care for nausea, back pain and heart palpitations. (R. 827-829.)

The ALJ concluded that the medical record reflected moderate physical signs of Plaintiff's cardiac and respiratory symptoms, while noting the multiple emergency room

4

visits for her cardiac symptoms. (R. 50.) He explained that the medical records following Plaintiff's hospitalizations reflected only mild to moderate objective cardiac signs and improving symptoms. (R. 49.) The ALJ also noted that the medical record reflected only moderate respiratory symptoms and objective signs. (R. 49-50.) He found the moderate objective signs did not support significant off-task behavior or excessive absenteeism.[3] (*Id.*)

Plaintiff contends that she was unable to be present for work for a total of 22 days between July 22, 2017 and February 11, 2019, which, if averaged over an 18-month period, would result in Plaintiff's absence from work 1.2 days per month, exceeding the degree of absenteeism tolerated by employers, according to the testimony of the vocational expert who appeared at hearing. (*See* SOE at 8-9; R. 104.)

Under the Social Security Act, "disability" is defined to mean "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Defendant's regulations state that unless an impairment "is expected to result in death, it must have lasted or be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509, 416.909 (the so-called "duration requirement"). The Supreme Court has held that the duration requirement applies "both to the 'impairment'

---

[3] Neither of the state agency medical consultants, whose opinions the ALJ found partially persuasive, included any off-task or absenteeism limitation.

5

and the 'inability' to work requirements." *Barnhart v. Walton*, 535 U.S. 212, 222-23 (2002).

Given the durational requirement, to support a claim of excessive absenteeism even where a claimant has experienced multiple and/or extensive hospitalizations, the claimant must demonstrate that the acute symptoms that resulted in the hospitalization will persist. Plaintiff has cited no legal authority to support her approach – to pro rate the number of days she was in the hospital over the time necessary to satisfy the durational requirement and/or to establish the level of monthly absenteeism that a vocational expert opined would effectively eliminate jobs in the national economy that Plaintiff could perform. In fact, the legal authority is to the contrary. *See, e.g.*, *Alyson G. v. Saul*, No. 2:19-cv-00502, 2020 WL 6376640, at *6 (D. Me. Oct. 20, 2020) (although plaintiff had undergone a "serious hospitalization" for acute postpartum depression, and her condition likely would have impacted her attendance in the short-term, there was "no indication that this attendance limitation would last longer than 12 months"); *Chicky v. Comm'r Soc. Sec.*, No. 1:17-cv 819, 2018 WL 3720065, at *7 n.2 (W.D. Mich. July 23, 2018) (noting that while there was evidence claimant had 20 days of hospitalization and 6 doctor visits in one year, claimant failed to develop claim that his absenteeism was work preclusive and did not "demonstrate that absenteeism due to the medical procedures lasted for a continuous period of more than 12 months."); *Jackson v. Berryhill*, Case No. 3:13-00692, 2017 WL 4937612, at *10 (M.D. Tenn. August 14, 2017) (seven hospitalizations in nine months did not necessitate finding of excessive absenteeism because "Jackson's emergency room visits ceased entirely less than a year after they began, [therefore] the ALJ had no reason to include absenteeism

6

related to medical treatment as an enduring limitation on Jackson's ability to work in the hypothetical she gave to the vocational expert."). The reasoning of the courts which have rejected similar arguments is sound. Plaintiff's argument is unpersuasive.

Plaintiff also contends the ALJ erred when he did not address Plaintiff's testimony that in November 2018, she was discharged due to absenteeism from her job working at the front desk of a hotel. In certain cases, an ALJ might be required to discuss in some detail evidence that a claimant missed time from work or lost jobs due to absenteeism. For instance, in *Craig G.C. v. Saul*, No. 2:20-cv-00217-JDL, 2021 WL 2012307 (D. Me. May 20, 2021), citing in part the plaintiff's testimony regarding his absences from work, this Court concluded the ALJ erred by failing to address the "material question of whether plaintiff would be absent from work." 2021 WL 2012307, at *4. In particular, the Court found the ALJ did not adequately address the plaintiff's testimony that he missed four days each month due to his asthma and, notably, a medical expert's opinion that as the result of the plaintiff's impairments, the plaintiff would miss more than four days each month. The Court concluded that "the ALJ's omission of any mention of [the expert's] opinion concerning absences was reversible error." *Id*. In this case, Plaintiff's testimony that she lost one job due to absenteeism,[4] without any testimony or other evidence as to the number

---

[4] Plaintiff's testified as follows:

Q. [W]hen you went – you decided to try to go back to work in, I believe, it was November of 2018, can you tell us what happened, why that job didn't continue.

A. I'd be at the desk, or at the front desk, I should say, and I would be coughing, and I'd kind of get nervous, the bloody nose, I'd have to go to the bathroom, or other times I would just cough, and I couldn't stop, and I'd have to – and I'd walk away. Reservation-wise, the same thing, I'd have to put them on hold, tell them to take the calls, and go take care of myself.

7

and frequency of the absences that resulted in the termination of her employment and as to whether the absences are likely to continue, does not require more comment by the ALJ.[5]

**B. RFC**

The ALJ determined that Plaintiff has the RFC to perform sedentary work, with additional postural, environmental and psychosocial restrictions. (R. 48.) The ALJ found the opinions of the two state agency medical consultants, who opined that Plaintiff could perform work at the light exertional level, partially persuasive.[6] (R. 50.) The ALJ explained that the consultants' opinions were only partially consistent with and supported

---

Q. [S]o why did that job end?

A. Because of my attendance.

Q. So they let you go?

A. Yeah.

Q. Had you violated their policy on absences?

A. I did.

(R. 87.)

[5] Plaintiff also suggests that when the ALJ found that the evidence did not support Plaintiff's contention that she would be absent from work excessively, the ALJ impermissibly interpreted raw medical data. (SOE at 10.) First, the duration requirement "is an issue that can be assessed as a matter of common knowledge," and where, as here, the ALJ supportably relied on treatment records showing improvement in Plaintiff's cardiac and respiratory conditions, he "did not run afoul of the rule against interpreting raw medical evidence." *Faye L. v. Saul*, No. 2:20-cv-00023-NT, 2021 WL 425984, at *6 (D. Me. Feb. 7, 2012) (rec. dec. adopted, 2021 WL 1135017 (D. Me. Mar. 24, 2021)). In addition, the ALJ's impression of the medical record (i.e., "moderate physical objective signs") does not constitute the interpretation of raw medical data.

[6] Donald Trumbull, M.D. and Benjamin Weinberg, M.D., opined that Plaintiff could lift or carry twenty pounds occasionally and ten pounds frequently, and sit for six hours and stand or walk for six hours in an eight-hour workday. (R. 116-18, 151-53.) They also included additional restrictions to occasional climbing ramps, stairs, ladders, ropes, and scaffolds, and frequent balancing, stooping, kneeling, crouching, and crawling. (*Id.*)

by the evidence, noting Plaintiff's testimony and that the medical record reflected moderate physical symptoms. (*Id.*) The ALJ limited Plaintiff to performing only occasional postural positions to account for Plaintiff's subjective report of her difficulties in balancing. (*Id.*) The ALJ determined that a restriction to sedentary work with further limitations better accounted for her symptoms. (*Id.*)

To the extent the ALJ assessed an RFC more favorable than the medical experts might have assessed does not require remand. *Wanda B. v. Saul*, No. 2:18-cv-00341-DBH, 2019 WL 3317969, at *4. (D. Me. July 24, 2019). *See also, Davis v. Colvin*, No. 1:14-cv-343-JHR, 2015 WL 3937423 (D. Me. June 25, 2015); *Wright v. Colvin*, No. 2:14-cv-75-JHR, 2015 WL 58458 (D. Me. Jan. 5, 2015); *Soto v. Colvin*, No. 2:14-cv-28-JHR, 2015 WL 58401 (D. Me. Jan. 5, 2015). In addition, Plaintiff's contention that the ALJ cannot rely upon the consulting experts or that the ALJ otherwise improperly interpreted raw medical data because after the experts issued their reports, Plaintiff was treated for soft tissue dysmotility in her esophagus, is unpersuasive. The ALJ may rely on experts' reports despite later-submitted evidence when the new evidence "does not call into question their conclusions." *Emily A. v. Saul*, No. 2:19-cv-00071-JDL, 2020 WL 2488576, at *7 (D. Me. May 14, 2020). The record of Plaintiff's treatment for the condition in 2019 does not generate a question about the experts' opinions. Plaintiff has not presented any persuasive evidence to support a finding that the 2019 record requires a more restrictive RFC than assessed by the ALJ.[7] *See Paquin v. Colvin*, No. 1:13-cv-360-JDL, 2014 WL 6679123, at

---

[7] Because Plaintiff's challenge to the ALJ's RFC finding fails, Plaintiff's related challenge to ALJ's reliance on the vocational expert's opinion also fails.

\*3 (D. Me. Nov. 25, 2014).

## CONCLUSION

Based on the foregoing analysis, I recommend the Court affirm the administrative decision.

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 15th day of July, 2021.